UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MOUNT CARMEL MINISTRIES )
and ALPHA CHRISTIAN SCHOOL )
)
    Plaintiffs, )
)
  v. )
) 15 C 7807
SEAWAY BANK AND TRUST )
COMPANY , )
)
    Defendant. )

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on Defendant Seaway Bank and Trust Company's ("Defendant") motion to dismiss Plaintiffs Mount Carmel Ministries and Alpha Christian School's (collectively, "Plaintiffs") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss is granted.

## BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Plaintiffs' Complaint are accepted as true. The Court draws all reasonable inferences in favor of Plaintiffs. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Mount Carmel Ministries ("Mount Carmel") is a large African American Baptist church in Hattiesburg Mississippi. Dkt. 34, at p. 1. Defendant "is a national bank with its principle place of business located in Chicago, Illinois." Dkt. 1-3, at ¶ 2. In 1999, Mount Carmel "purchased a church, school, daycare and senior care facilities" in Hattiesburg, Mississippi. Dkt. 1-3, at ¶ 4. In 2005, Defendant agreed to lend Mount Carmel $5 million dollars. *Id*. To secure the loan, Mount Carmel "executed a promissory note and deeds of trust." *Id*. Additionally, the parties signed a business loan agreement, a commercial security agreement, and a construction loan agreement. Dkt. 29-2, Dkt. 29-3, and Dkt. 29-4. While Plaintiffs only reference the promissory note and the "deeds of trust" in describing the "Loan Documents," it is undisputed that the execution of all of these documents evidenced and secured the loan. As required by the deed of trust, Mount Carmel secured and maintained property insurance from 2005 until 2012 through GuideOne Elite Insurance Company and GuideOne Company (collectively, "GuideOne"). Dkt. 1-3, at ¶ 5.

In October of 2012, GuideOne informed Mount Carmel that the GuideOne insurance policy was being cancelled, effective November 20, 2012. Dkt. 1-3, at ¶ 6. Consequently, Defendant "exercised its right under the Loan Documents" to obtain "force-placed" insurance on the property. Dkt. 1-3, at ¶ 7. The force-placed insurance consisted of two separate insurance policies, and the premium was payable by, and charged to, Mount Carmel's loan account. Dkt. 1-3, at ¶ 8. The force-placed

insurance coverage was for a period of thirty days, and it could be renewed for an additional thirty, ninety, or one-hundred-and-eighty days. *Id.*

Around February 7, 2013, the force-placed insurance policies were up for renewal. Dkt. 1-3, at ¶ 9. Consequently, Defendant allegedly contacted Mount Carmel to determine if Mount Carmel had obtained other insurance. *Id*. Mount Carmel asserts that during the conversation with Defendant on February 7, 2013 it "advised" Defendant that it was unable to secure other insurance because Plaintiffs became uninsurable after GuideOne purportedly cancelled its policy in November of 2012. Dkt. 1-3, at ¶ 10; Dkt. 34, at p. 7. Additionally, Mount Carmel claims that during that same conversation it "advised" Defendant to continue the force-placed insurance on the property and to add the premium for the force-placed insurance to Mount Carmel's loan account. Dkt. 1-3, at ¶ 11. According to Plaintiffs, during this conversation Defendant agreed to continue the force-placed insurance policies and to add the premium for the force-placed insurance to Mount Carmel's loan account. *Id.*

Plaintiffs allege that even though they "advised" Defendant to continue the force-placed insurance on the property, Defendant allowed the force-placed insurance to lapse. Dkt. 1-3, at ¶¶ 12-13. Moreover, Plaintiffs contend that Defendant subsequently "failed to immediately advise [Mount Carmel] that the promised insurance had not been procured, renewed, and/or continued." Dkt. 1-3, at ¶ 13. Two days after the force-placed insurance expired, an F-5 tornado struck the Hattiesburg area and caused extensive damage to Mount Carmel's property. Dkt. 1-3, at ¶ 14. As

a result of Defendant's failure "to procure, continue, and/or renew the agreed upon force placed insurance policies[,]" Plaintiffs filed the instant suit against Defendant.

## PROCEDURAL HISTORY

Plaintiffs' initial Complaint, filed in the Circuit Court of Forrest County, Mississippi, was later amended and subsequently removed by Defendant to the United States District Court of the Southern District of Mississippi, Eastern Division. Dkt. 29, at p. 3. Thereafter, Defendant moved to transfer venue to this Court. *Id*. Defendant's motion to transfer venue was granted, and Plaintiffs' seven count Complaint is now before this Court. *Id*. Plaintiffs allege that Defendant: (i) breached its contractual agreement when Defendant "failed to procure, continue, and/or renew the agreed upon force placed insurance" (Count I); (ii) breached the implied duty of good faith and fair dealing (Count IV); and (iii) breached its fiduciary duty (Count V). Additionally, Plaintiffs contend that Defendant's behavior: (i) amounts to tortious breach of contract (Count II); (ii) constitutes negligence, gross negligence, or reckless disregard of Mount Carmel's rights (Count VI); and (iii) was willful, intentional and grossly negligent, and therefore, Defendant's acted in bad faith (Count VII). Finally, Plaintiffs seek equitable relief alleging a promissory estoppel/implied contract claim (Count III). Dkt. 1-3, p. 5-9.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") "tests the sufficiency of the complaint, not the merits of the case."

*McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations but must provide enough factual support to raise his right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendant contends that all of Plaintiffs' claims are barred by the Illinois Credit Agreements Act ("ICAA"). Section two of the ICAA prohibits a debtor from bringing an action based on or related to a credit agreement, "unless the credit agreement is in writing, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and debtor." 815 ILCS 160/2. A credit agreement is "an

agreement or commitment by a creditor to lend money or extend credit or delay or forebear repayment of money . . . " 815 ILCS 160/1. Here, the Loan Documents constitute a credit agreement under 815 ILCS 160/1.

In order to modify or amend a valid credit agreement, the modification or amendment must satisfy the requirements articulated in section two of the ICAA. 815 ILCS 160/3. Furthermore, a modification or an amendment of an existing credit agreement does not create a new credit agreement, unless the modification or amendment meets the requirements set out in section two of the ICAA. *MB Fin. Bank, N.A. v. Patel*, No. 10 C 6566, 2012 WL 346456, at *3 (N.D. Ill. Feb. 1, 2012). The ICAA has adopted a "strong form" of the Statute of Frauds by requiring not only a written document, but the signature of both parties in order to modify an existing credit agreement. *Harris N.A. v. Hershey*, 711 F.3d 794, 799 (7th Cir. 2013). A verbal modification of an existing credit agreement, therefore, does not satisfy the requirements of section two of the ICAA.

Plaintiffs argue that the ICAA "has no bearing on this case" because Mount Carmel "does not allege any oral modification of the loan documents." Dkt. 34, at p. 13. Instead, Plaintiffs contend that Defendant's verbal representations regarding the force-placed insurance "were merely consistent with the allegations . . . establishing a breach of the written loan documents." *Id*. Essentially, Plaintiffs assert that Defendant's verbal representations are "not an agreement to modify or amend the credit agreement, but [are] an act in conformity with the provisions of the" Loan

Documents. *Nordstrom v. Wauconda Nat'l Bank*, 282 Ill. App. 3d 142, 145 (1996). However, this argument is unavailing as the Loan Documents do not require Defendant to "procure, continue, or renew" force-placed insurance on the property.

"In construing a contract, the goal is to give effect to the intent of the parties, which is to be gleaned from the language of the contract." *Id.*; *see also Harmon v. Gordon*, 712 F.3d 1044, 1050-51 (7th Cir. 2013). As Plaintiffs properly recognize, the language from the promissory note provides that "the Lender 'may' purchase property insurance at the expense of the borrower." Dkt. 34, at p. 15. Specifically, the "Illinois Insurance Notice" section of the promissory note states,

> [u]nless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender *may* purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests."

Dkt. 29-1, at p. 2 (emphasis added). The Loan Documents permit, but do not require Defendant to purchase insurance to protect its interest in the property. *See Westinghouse Elec. Corp. v. McLean*, 938 F.Supp. 487, 489, 493 (N.D. Ill. 1996) (written credit agreement permitted, but did not require, Westinghouse to "disburse additional funds to pay the interest due on the note and other project expenses." Any obligation by Westinghouse to disburse such funds was predicated on an oral promise which was "at a minimum, 'related to a credit agreement,' [ ] and, therefore, any action related to it [was] barred by the Credit Act, because it [was] not in writing."). Thus, Defendant's verbal representations that it would "procure, continue, or renew"

7

the force-placed insurance on the property are not "merely consistent with the allegations . . . establishing a breach of the written loan documents," but instead are verbal modifications or amendments to the Loan Documents. Defendant's failure to "procure, continue, or renew" the force-placed insurance, therefore, does not constitute a breach of the Loan Documents as the Loan Documents do not require Defendant to "procure, continue, or renew" the force-placed insurance.

Plaintiffs' argument, in the alternative, that the Loan Documents are ambiguous regarding the "rights and duties of the parties following [Defendant's] election to secure [force-placed insurance] coverage" is equally unpersuasive. Dkt. 34, at p. 17. While Plaintiffs are right that "this precise set of facts and circumstances is not specifically addressed" by the Loan Documents, they simultaneously ignore that the Loan Documents do not require Defendant "to procure, continue or renew" the force-placed insurance. Dkt. 34, at p. 20. In fact, as acknowledged by Plaintiffs in their Complaint, the contractual language of the Loan Documents clearly articulates that Plaintiffs were obligated to purchase insurance to secure the collateral. Dkt. 1-3, at ¶ 5. The business loan agreement and the construction loan agreement require Plaintiffs to "[m]aintain fire and other risk insurance . . ." Dkt. 29-2, at p. 2; *see also* Dkt. 29-4, at p. 5. Similarly, the commercial security agreement and the deed of trust state that Plaintiffs, "shall procure and maintain all risks insurance . . ." Dkt. 29-3, at p. 2; *see also* Dkt. 29-5, at p. 3. This language, from the Loan Documents, unambiguously states that Plaintiffs are responsible for purchasing insurance to secure

the property. Because the written Loan Documents do not require Defendant to "procure, continue, or renew" force-placed insurance, Defendant's verbal representations, as well as the written notification regarding the force-placed insurance, constitute a modification of the Loan Documents. *See Westinghouse*, 938 F.Supp. at 493; *see also Nordstrom*, 282 Ill. App. 3d at 145.

"[T]here is no limitation as to the type of actions by a debtor which are barred by the [ICAA], so long as the action is in any way related to a credit agreement." *FirstMerit Bank, N.A. v. Donlin Builders, Inc.*, 13 C 2734, 2015 WL 1165912, at *3 (N.D. Ill. Mar. 11, 2015) (quoting *First Nat'l Bank in Staunton v. McBride Chevrolet, Inc*. 267 Ill. App. 3d 367, 372 (1994)) (ICAA barred all of Defendants' counterclaims including breach of contract, breach of implied covenant of good faith and fair dealing, and violation of Consumer Fraud Act); *see also Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 225-26 (7th Cir. 1996) (Seventh Circuit upheld district court's conclusion that Defendant's counterclaims alleging fraud, breach of contract, promissory estoppel, breach of fiduciary duty, and constructive fraud were barred by the ICAA); *and Nordstrom*, 282 Ill. App. 3d at 145 (ICAA bars claims based on promissory estoppel). In the instant matter, while a "modification agreement to procure insurance is not, itself, a credit agreement, the requirement" that Plaintiffs acquire and maintain insurance "for the collateral is an integral part of the credit agreement." *See Nordstrom*, 282 Ill. App. 3d at 146. Thus, the alleged modification agreement that Defendant would "procure, continue, or renew" the force-placed

9

insurance relates to the credit agreement between the parties. *See id.* Accordingly, all of Plaintiffs' claims predicated on the alleged modification agreement are actions "related to a credit agreement," and therefore, barred by the ICAA. *See id.*

Despite Plaintiffs' argument to the contrary, each cause of action "depend[s] for [its]" existence upon the alleged modification agreement. (The alleged modification agreement includes both Defendant's written notification regarding the force-placed insurance, as well as the verbal representations.) *See Davis v. Merrill Lynch Bus. Fin. Srvs. Inc.*, No. 03 C 2680, 2004 WL 406810, at *2 (N.D. Ill. Feb. 13, 2004) (Although Plaintiffs argued that they were not "seeking to enforce the oral representations made by Merrill Lynch, and [that] the representations [were] only pled to demonstrate fraud[,]" the court found that "without the oral representations, there [could not] be an actionable cause for the fraudulent misrepresentation claim in Count III and the breach of fiduciary duty claim for making false statements in Count VIII."). The ICAA seeks to bar actions that arise or are related to verbal promises. *Westinghouse*, 938 F.Supp. at 492 ("The statements that the Defendants rely upon in making their fraud arguments were orally stated by Westinghouse's representative . . . this is exactly the type of oral promise that was contemplated to be barred by the [ICAA].). Thus, because the modification agreement to procure insurance is sufficiently related to the valid credit agreement between the parties, the causes of actions related to the modification agreement are barred by the ICAA. *See Nordstrom*, 282 Ill. App. 3d at 144-46.

## CONCLUSION

For the aforementioned reasons, the Defendant's motion to dismiss is granted.

It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Dated: 3/9/2016